Brian S. King, #4610
**LAW FIRM OF BRIAN S. KING**
336 South 300 East, Suite 200
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com

Attorney for Plaintiffs

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| SCOTT A. and HOLLYE A., individually and as guardians of C.A., a minor,<br><br>         Plaintiffs,<br><br>vs.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY, CIGNA BEHAVIORAL HEALTH, and LIBERTY OILFIELD SERVICES OPEN ACCESS PLUS HIGH PLAN,<br><br>         Defendants. | COMPLAINT<br><br>Civil No. |

Plaintiffs Scott A. ("Scott") and Hollye A. ("Hollye") (collectively, "Plaintiffs" or "the A. family"), through their undersigned counsel, complain and allege against Defendants Cigna Health and Life Insurance Company ("Cigna"), Cigna Behavioral Health ("CBH"), and Liberty Oilfield Services Open Access Plus High Plan ("the Plan") as follows.

**PARTIES, JURISDICTION AND VENUE**

1. Scott and Hollye are natural persons residing in Adams County, Colorado. Scott and Hollye are C.A.'s parents.

1

2. Liberty Oilfield Services LLC ("LOS") is a corporation with its headquarters in Colorado. LOS does business in the State of Utah. During the relevant time frame, LOS was Scott's employer.

3. LOS sponsors a variety of benefit plans for its employees and their dependents including, but not limited to, a self-funded health benefits plan. The name of the Plan is Liberty Oilfield Services Open Access Plus High Plan.

4. Scott was a participant in the Plan and Hollye and C.A. were beneficiaries of the Plan.

5. Cigna is an insurance company doing business across the United States, including the State of Utah. Cigna is the third party claims administrator for the Plan.

6. Cigna Behavioral Health ("CBH") is an affiliate or subsidiary of Cigna and administers mental health claims for the Plan.

7. The Plan is an employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA").

8. C.A. received medical care and treatment in the State of Utah at Turn About Ranch ("TAR"), a residential treatment facility providing mental health care to adolescents, aged thirteen to eighteen.

9. CBH and the Plan denied some of C.A.'s claims for payment of his medical expenses in connection with his treatment at TAR. This lawsuit is brought to obtain this Court's order requiring the Plan to pay C.A.'s unpaid expenses incurred during his treatment at TAR.

10. This Court has jurisdiction of this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

11. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) because the Defendants do business in Utah, the medical treatment at issue in this case was provided in the State of Utah and the financial obligations of the Defendants to C.A.'s healthcare providers were incurred in the state of Utah.  In addition, the Plaintiffs wish to maximize the likelihood that the sensitive nature of the mental health treatment provided for C.A. will not become publicly known and believe the likelihood of maintaining his privacy is increased by bringing their claim in Utah.  Based on ERISA's nationwide service of process provision and 28 U.S.C. § 1391, venue is appropriate in the state of Utah.

12. The remedies the Plaintiffs seek under the terms of ERISA and under the Plan are for the benefits due and pursuant to 29 U.S.C. § 1132(a)(1)(B), an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. § 1132(g).

## BACKGROUND FACTS

### C.A.'s Developmental and Medical Background

13. C.A. is the oldest of two children.  He met all developmental milestones.

14. C.A. exhibited the onset of symptoms early in his childhood.

15. C.A. was involved in therapy for several years including an intensive outpatient program.

16. C.A.'s behavior escalated to include defiance and disrespect at school and home.

17. On a few occasions, C.A. assaulted his sister when angry.

18. C.A. had difficulties accurately interpreting social cues, difficulty with adaptive behavior, and immaturity, which resulted in his inability to form relationships with his peers.

19. On numerous occasions, C.A. was abusive, both verbally and physically, to his family, school staff, and peers.

## C.A.'s Treatment at TAR

20. C.A. received psychiatric health care and participated in an intensive outpatient treatment program with Centennial Peaks Hospital without resolution of his symptoms.

21. At the recommendation of C.A.'s treating physicians, he was admitted to TAR on December 28, 2013.

22. Shortly after his admission to TAR, C.A. was diagnosed as follows:

| | |
|---|---|
| AXIS I | 314.01 Attention-Deficit/Hyperactivity Disorder, Combined Type |
| | 313.81 Oppositional Defiant Disorder |
| | 312.34 Intermittent Explosive Disorder |
| | R/O 299.80 Asberger's Disorder |
| AXIS II | V71.09 No Diagnosis on Axis II |
| AXIS III | None |
| AXIS IV | Problems with Primary Support Group |
| | Educational Problems |
| | Problems Related to the Social Environment |
| AXIS V | Current GAF: 32, Highest Past Year GAF: 32[1] |

23. C.A. was unhappy about being placed in a residential treatment program, but despite his feelings, he committed to his treatment plan. His medical records documented frequent regressions but C.A.'s condition slowly improved.

24. C.A. continued to experience difficulties in interacting with peers while in treatment and minimized consequences for his actions.

---

[1] G.A.F., or global assessment of functioning, was developed as a tool for mental healthcare providers to assess the overall level of functioning and ability to carry out activities of daily living for their patients. There is a separate scale utilized when the patient is a child or adolescent. A GAF of 32 on the child's global assessment scale indicates "Major impairment in functioning in several areas and unable to function in one of these areas, i.e., disturbed at home, at school, with peers, or in the society at large, e.g., persistent aggression without clear instigation; markedly withdrawn and isolated behavior due to either mood or thought disturbance, suicidal attempts with clear lethal intent. Such children are likely to require special schooling and/or hospitalization or withdrawal from school (but this is not a sufficient criterion for inclusion in this category)." D. Shaffer, M.S. Gould, H. Bird, and P. Fisher Modified from: Rush J, et al: Psychiatric Measures, APA, Washington DC, 2000.

25. C.A.'s Discharge Summary dated April 4, 2014, shows that his GAF score improved while he was at TAR. His discharge diagnoses were:

| | |
|---|---|
| AXIS I | 314.01 Attention-Deficit/Hyperactivity Disorder, Combined Type |
| | 313.81 Oppositional Defiant Disorder |
| | 312.34 Intermittent Explosive Disorder |
| | 315.39 Social (Pragmatic) Communication Disorder |
| AXIS II | V71.09 No Diagnosis on Axis II |
| AXIS III | None |
| AXIS IV | Problems with Primary Support Group |
| | Educational Problems |
| | Problems Related to the Social Environment |
| AXIS V | Current GAF: 42, Highest Past Year GAF: 56 |

26. The Discharge Summary recommended continued individual therapy, family therapy, accommodations as needed at school, extracurricular activities, regular exercise, family time, and family meetings following C.A.'s discharge from TAR.

27. C.A. graduated from the program and completed all treatment at TAR.

## The Plan's Denial of Coverage and the A. Family's Appeal

28. Claims were submitted to Cigna and coverage for treatment for claims from January 1, 2014 through April 4, 2014 were denied.

29. The Stage 1 Denial letter from CBH, dated July 25, 2014, states:

> Based upon the available clinical information, your symptoms did not meet Cigna's Behavioral Health Medical Necessity Criteria for continued stay at Residential Mental Health Treatment for Children and Adolescents level of care from 01/01/2014-04/04/2014. You were not in need of 24 hour supervision. You were in behavioral control, compliant with your treatment plan and voicing motivation for treatment. You were compliant with medications. You were attending and participating in groups and school. Appropriate and timely treatment was available at a less restrictive level of care.

30. CBH did not refer to or cite any specific medical records it had reviewed to determine whether or not C.A.'s treatment met CBH's level of care guidelines.

31. Scott appealed the denial of coverage on December 12, 2014. With his appeal, Scott provided CBH's Criteria for Admission, Criteria for Continued Stay, letters from C.A.'s treating physicians detailing the medical necessity of C.A.'s residential mental health treatment, and medical records from TAR.

32. Scott argued that the length of stay in most adolescent treatment programs is even longer than the length of stay that C.A. required at TAR, and therefore should have been covered.

33. Scott also argued that CBH had not carried out a meaningful dialogue with him because it had failed to identify how C.A.'s condition did not meet the medical necessity criteria in the plan, nor did CBH provide accurate and specific references to the clinical record that supported its conclusion that the services provided to C.A. were not covered.

34. Scott argued that CBH's denial conclusions fell short of ERISA requirements and that the denial should have contained specific references to the clinical record to support CBH's determination that C.A.'s treatment was not covered under the Plan.

35. CBH maintained its denial on behalf of the Plan in a letter dated January 16, 2015. The denial letter stated the conclusion for denial as follows:

> The clinical basis for this decision is: Based upon the available clinical information, your symptoms did not meet Cigna Behavioral Health Medical Necessity Criteria for continued stay at Residential Mental Health Treatment for Children and Adolescents level of care from 01/01/2014-04/04/2104. You were not in need of 24 hour supervision. You were in behavioral control, compliant with your treatment plan and voicing some motivation for treatment. You were compliant with medications. You were attending and participating in groups and school. What is noted is that you have been involved in medication management but have not been consistently engaged in the individual psychotherapy needed to address your chronic poor choices of coping style. If you were motivated to engage you could have safely and effectively used structured outpatient services to address your need to improve social skills. If not, your treatment team would need to discuss placement in a therapeutic group home for others to accept responsibility for managing your oppositionality. Appropriate and timely

6

  treatment was available at a less restrictive level of care. The initial denial was upheld.

36. CBH did not address any of Scott's arguments and again failed to reference the specific records used to make the determination to maintain denial.

37. Scott appealed the upheld denial through an Independent Review in a letter dated February 25, 2015.

38. Scott argued that C.A.'s treatment at TAR was medically necessary and met the criteria for residential treatment.

39. An independent reviewer, MCMC, upheld CBH's denial. MCMC listed specific medical notes for C.A., along with a variety of references utilized during the review. MCMC did not include the CBH Behavioral Health Medical Necessity Criteria or the A. family's Plan in its list of reviewed documents.

40. CBH repeatedly failed to engage in a meaningful dialogue with Scott regarding what, if any, additional information he needed to provide to allow CBH to evaluate the medical necessity of C.A.'s treatment and repeatedly failed to reference specific information, medical records, and other documents it used to determine medical necessity.

41. CBH failed to consider the substance of the information and arguments presented by Scott in his appeal letters.

42. The denial of benefits for C.A.'s care from January 1, 2014 through April 4, 2014 was a breach of contract and caused the A. family to incur medical expenses that should have been paid by the Plan in an amount exceeding $70,000.00.

43. Scott exhausted his appeal obligations under ERISA.

//

//

## CAUSE OF ACTION

### (Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))

44. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators.  It sets forth a special standard of care upon plan fiduciaries such as CIGNA and CBH, acting as agents of the Plan, to "discharge their duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the Plan. 29 U.S.C. §1104(a)(1).

45. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with the Plaintiffs in the pre-litigation appeal process.  29 U.S.C. §1133(2).

46. CBH breached its fiduciary duties to C.A. when it failed to comply with its obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in the Plaintiffs' interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries and to provide a full and fair review of the Plaintiffs' claims.

47. The actions of CBH and the Plan in failing to provide coverage for C.A.'s medically necessary treatment at TAR are a violation of the terms of the Plan and CBH's medical necessity criteria.

48. The actions of CBH and the Plan, as outlined above, have caused damage to Scott and Hollye, in the form of denial of payment for medical services provided to C.A. from January 1, 2014 through his discharge on April 4, 2014.

49. CBH and/or the Plan are responsible to pay C.A.'s medical expenses as benefits due under the terms of the Plan together with prejudgment interest pursuant to U.C.A. §15-1-

1, attorney fees and costs pursuant to 29 U.S.C. §1132(g).

WHEREFORE, the Plaintiff seeks relief as follows:

1. Judgment in the total amount that is owed for C.A.'s medically necessary treatment at TAR under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

2. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

3. For such further relief as the Court deems just and proper.

DATED this 8th day of April, 2016.

By    s/ Brian S. King
       Brian S. King
       Attorney for Plaintiffs


County of Plaintiffs' Residence:
Adams County, Colorado